*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA K. ANDRESON and DAVID E. ANDRESON,

Plaintiffs-Appellants,

v

PROGRESSIVE MICHIGAN INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
December 19, 2019

No. 345864
Eaton Circuit Court
LC No. 2016-000735-CK

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Appellants appeal as of right the trial court order granting summary disposition in defendant's favor. We affirm.

On October 11, 2013, plaintiff, David Andreson, was driving his vehicle with plaintiff, Debra Andreson, as a passenger when they were rear-ended at a red light. Plaintiffs suffered injuries as a result of the accident. At the time of the accident, plaintiffs had an auto insurance policy issued by defendant on the vehicle with a liability limit of $250,000 per person and $500,000 per accident. That policy also contained a provision for underinsured motorist benefits. The driver of the other vehicle had an insurance policy with Farmers Insurance Company with a policy limit of $50,000 per person and $100,000 per accident and was thus, underinsured.

Plaintiffs brought an action against the other driver and settled with her for the $100,000 policy limit contained in her policy. Plaintiffs thereafter brought an action against defendant for breach of contract, asserting that it denied their request for underinsured motorist benefits. The matter proceeded to a jury trial, at the conclusion of which the jury found in favor of plaintiffs. Plaintiffs thereafter moved for offer of judgment sanctions and on December 14, 2016, the trial court granted plaintiffs' motion in part and denied it in part. The trial court found that the offers of judgment were not made in the spirit of gamesmanship, but that plaintiffs were entitled to reasonable attorney fees and costs in the amount of $128,660.67. On appeal, this Court affirmed

-1-

in most respects, except that we remanded the matter back to the trial court to reduce the jury verdict to the maximum insurance policy limits. *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76; 910 NW2d 691 (2017).

While the appeal in *Andreson*, supra, was pending, plaintiffs initiated a second action against defendant. Plaintiffs contended, primarily, that defendant acted in bad faith in the handling of their claim for underinsured motorist benefits and violated the Uniform Trade Practices Act (UTPA), and that under the UTPA they were entitled to 12% penalty interest if the benefits were not paid on a timely basis. Relevant to the instant matter, plaintiffs moved for partial summary disposition pursuant to MCR 2.116(C)(10) on the allegations that defendant violated the UTPA and that 12% penalty interest was payable on the judgment entered against it in the prior case and on the taxable costs and attorney fees (offer of judgment sanctions) awarded in that case. Defendant also moved for summary disposition, citing MCR 2.116(C)(8) and (10) and arguing, in part, that plaintiffs were not entitled to interest under the UTPA because they did not properly plead a claim for such interest, and because the claims for statutory interest were barred by MCR 2.203(A) and by res judicata. The trial court denied plaintiff's motion for partial summary disposition, but awarded plaintiffs 12% penalty interest on the jury verdict. The trial court denied plaintiff's request for 12% penalty interest on their award of offer of judgment sanctions. The trial court further granted summary disposition in defendant's favor, opining that plaintiffs' claim of bad faith was not supported by the record.

On appeal, plaintiffs first contend that the trial court erred in refusing to award them 12% penalty interest under the UTPA on their award of offer of judgment sanctions. We disagree.

We review de novo the interpretation and application of a statute as a question of law. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). Our goal, in reviewing a statute, is to give effect to the legislature's intent, focusing first on the statute's plain language. *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018). When a statute is unambiguous, "the statute must be enforced as written. No further judicial construction is required or permitted." *Id.* (citation omitted). A statutory term or phrase "cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018).

MCL 500.2006, part of the UTPA, states:

(1) A person must pay on a timely basis to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

* * *

(4) If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. If the claimant is a third party tort claimant, the benefits paid bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith, and the bad faith was determined by a court of law. The interest must be paid in addition to and at the time of payment of the loss. If the loss exceeds the limits of insurance coverage available, interest is payable based on the limits of insurance coverage rather than the amount of the loss. If payment is offered by the insurer but is rejected by the claimant, and the claimant does not subsequently recover an amount in excess of the amount offered, interest is not due. Interest paid as provided in this section must be offset by any award of interest that is payable by the insurer as provided in the award.

MCL 500.2006(4) specifically provides that if "*benefits* are not paid on a timely basis, *the benefits paid* bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to *benefits* under the insured's insurance contract." (emphasis added). By its explicit language, 12% interest is payable on the insurance "benefits" only. Plaintiffs, however, assert that offer of judgment sanctions consisting of attorney fees and taxable costs is clearly a benefit of plaintiffs' policy with defendant, and that defendant failed to timely pay the awarded sanctions such that they are entitled to 12% penalty interest on the sanctions award.

In support of their claim that the penalty interest is payable on the sanction award, plaintiffs cite to *Nickola v MIC Gen Ins Co*, 500 Mich 115; 894 NW2d 552 (2017). However, in *Nickola*, the Supreme Court succinctly stated that, "[t]he issue presented in this case is whether an insurer's untimely payment of underinsured motorist (UIM) benefits is subject to penalty interest under the Uniform Trade Practices Act." *Id*. at 118. Specifically, the Court was called upon to determine whether a first party tort claimant is entitled to penalty interest under the UTPA if their claim is "reasonably in dispute." *Id*. at 124-125. The Supreme Court, looking at the plain, unambiguous language of MCL 500.2006(4) held that the "reasonably in dispute" language applies only to third party tort claimants and that first party claimants were entitled to penalty interest for the untimely payment of benefits regardless of whether liability of the insurer for the claim is reasonably in dispute. This case thus has no bearing whatsoever on the matter before us.

Not only have plaintiffs failed to provide any support for their position, it is clear that offer of judgment sanctions are not a "benefit" to which they are entitled under their insurance contract with defendant. "Benefit" is defined, in part, in Merriam-Webster's Collegiate Dictionary (11th ed.) as "a payment or service provided for under an . . . insurance policy." Thus, plaintiffs would be entitled under MCL 500.2006(4) to 12% interest on payments or services provided for under their policy with defendant. As the trial court properly found, a sanction provided for in the Michigan Court Rules for an offer of judgment is not a "benefit paid" (i.e., a

service or payment provided for under the insurance policy) as set forth in or contemplated by MCL 500.2006(4).

MCR 2.405(D) governs offers of judgment and states, in relevant part:

> **Imposition of Costs Following Rejection of Offer.** If an offer is rejected, costs are payable as follows:
>
> (1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.
>
> (2) If the adjusted verdict is more favorable to the offeree than the average offer, the offeror must pay to the offeree the offeree's actual costs incurred in the prosecution or defense of the action. However, an offeree who has not made a counteroffer may not recover actual costs unless the offer was made less than 42 days before trial.
>
> (3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule.

The purpose of MCR 2.405(D) is "to encourage settlement and to deter protracted litigation." *Luidens v 63rd Dist Court*, 219 Mich App 24, 31; 555 NW2d 709 (1996) (citation omitted). The purpose of the penalty interest statute (MCL 500.2006), on the other hand, is to penalize insurers for dilatory practices in settling meritorious claims. *Dept of Transp v Initial Transp, Inc*, 276 Mich App 318, 330–31; 740 NW2d 720 (2007), reversed in part on other grounds, 481 Mich 862; 748 NW2d 239 (2008). The purpose of MCL 500.2006 is "not to compensate a plaintiff for delay in recovering benefits to which the plaintiff is ultimately determined to be entitled." *Id*. (citation omitted).

Given the differing purposes of the statutory interest provision in the UTPA and MCR 2.405(D), the definition of "benefit," and the lack of authority indicating that penalty interest was intended to apply to offer of judgment sanctions, the trial court did not err in denying plaintiffs their requested 12% penalty interest on the offer of judgment sanctions that they were awarded.

Plaintiffs next assert that the trial court erred in granting summary disposition in defendant's favor on plaintiffs' claim of bad faith. We again disagree.

We review de novo a trial court's decision regarding a motion for summary disposition. *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. In deciding a motion under MCR 2.116(C)(10), the court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* at 472-473.

Plaintiffs aver that an insurer has a contractual obligation to act in good faith and when it, as here, refuses to make or delays in making a no-fault payment, there exists a rebuttable presumption that the action is unreasonable (i.e., in bad faith). According to plaintiffs, two of

defendant's actions evidence bad faith on its part: (1) its violation of the UTPA, and (2) its failure to pay underinsured motorist benefits until 2 ½ years after the jury verdict in plaintiffs' favor, and five months after this Court affirmed the trial court. Both arguments lack merit.

We first note that plaintiffs have failed to support their positions with any binding authority. The vast majority of the cases relied upon by plaintiffs have no relevance to the issues before this Court. In *Attard v Citizens Ins Co of Am*, 237 Mich App 311, 317; 602 NW2d 633 (1999), for example, the Court did state "[w]hen an insurer refuses to make or delays in making payment, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay." However, that statement was made with respect to:

> the no-fault act's attorney fee provision, MCL 500.3148(1), which provides that an attorney is entitled to a reasonable fee for representing a claimant in an action for personal protection insurance benefits that are overdue and that the fee "shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." When determining whether attorney fees are warranted for an insurer's delay to make payments under the no-fault act, a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty.

*McKelvie v Auto Club Ins Ass'n*, 203 Mich App 331, 334–35; 512 NW2d 74 (1994), similarly addresses the award of attorney fees "pursuant to § 3148(1) of the no-fault act." Lacking any citation to relevant authority in their favor, plaintiffs' claims of bad faith necessarily fail. See, e.g., *Wolfe v Wayne-Westland Cmty Sch*, 267 Mich App 130, 139; 703 NW2d 480 (2005).

Moreover, absent an "allegation and proof of tortious conduct existing independent of the breach, exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract." *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 420–21; 295 NW2d 50 (1980) (citation omitted). Michigan does, however, recognize "an insured's claim against its insurer for bad faith in refusing to settle." *J & J Farmer Leasing, Inc v Citizens Ins Co of Am*, 472 Mich 353, 356, n 3; 696 NW2d 681 (2005). This is because "where the insurer defends the action it has a substantial measure of control in the conduct of the lawsuit and is in a position to disregard the interests of the insured and expose him to the risk of a judgment in excess of policy limits. To protect the insured's interest, the courts have required that the insurer make reasonable efforts to settle within policy limits." *Stockdale v Jamison*, 416 Mich 217, 224; 330 NW2d 389 (1982).

Here, plaintiffs' allegations of bad faith do not concern tortious conduct independent of defendant's breach of the parties' insurance contract. And our Courts' recognition of a claim for bad faith refusal to settle appears to apply only in situations where the claimant's insurer is defending an action and refuses/neglects to settle *on behalf of* the claimant. See, e.g., *Frankenmuth Mut Ins Co v Keeley*, 433 Mich 525, 534; 447 NW2d 691(1989), on reh 434 Mich 1206; 462 NW2d 750 (1990), and on reh 436 Mich 372; 461 NW2d 666 (1990); *J & J Farmer Leasing, Inc* 472 Mich 353. Despite being a doubtful position, for purposes of this appeal only we will assume there exists the potential that an action could lie for bad faith in failing or

refusing to settle a claim brought against the insurer by its insured. Plaintiffs have claimed that defendant acted in bad faith in refusing to accept their counter-offer of settlement.

The trial court in this matter noted that defendant made an offer of judgment to plaintiffs for $60,000.00. According to the trial court, defendant's insurance adjuster testified that defendant initially, when it made the offer, thought that plaintiffs had injuries that should be compensated. However, it later received medical records indicating that plaintiff Debra Andreson's injuries were or could have been pre-existing conditions. The trial court found that the issue of injuries and whether they were pre-existing was one of the main issues before the jury, so that defendant's position was not unreasonable. The trial court also noted that the matter went to case evaluation at which three independent individuals recommended a value of $60,000 for plaintiffs' case. We agree that, where a dispute exists as to the nature and extent of a plaintiff's injuries, particularly when based on medical records, a refusal to accept an offer of settlement rather than proceed to jury trial does not constitute bad faith.

As indicated by plaintiffs, in *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136–37; 393 NW2d 161 (1986), our Supreme Court set forth twelve specific factors that may be considered when determining whether liability exists for bad faith. However, that case addressed an instance in which an excess insurer brought an action against a primary insurer for failing to settle a claim against the insured in good faith. Thus, its relevance to the instant matter is questionable. Moreover, there is no question of material fact that plaintiffs did not allege, let alone prove, any of the enumerated twelve factors.

Plaintiffs claim that defendant acted in bad faith by misleading them with respect to the collectability of the underlying tortfeasor, the driver of the other vehicle. However, plaintiffs were represented by counsel in their underlying lawsuit against that driver. There has been no claim or assertion that plaintiffs spoke to or interacted with defendant after they retained counsel in the underlying lawsuit. In fact, plaintiff Debra Andreson testified that, after retaining counsel in November 2013, she never had any personal contact with defendant, other than to cancel her insurance with them. Debra testified that she had no idea whether her attorneys in the underlying matter investigated the other driver's assets before finalizing the settlement with her in May 2015, and that prior to the settlement, she did not contact defendant and ask about any assets. Plaintiff Debra Andreson affirmatively testified that no one from defendant made any representations to her regarding the other driver's assets. Similarly, plaintiff David Andreson testified that he had no contact with defendant at all after the October 2013 accident; instead, all communication with defendant was though the attorney they retained in November 2013 to sue the other driver. That being the case, there is no material question of fact that defendant did not mislead plaintiffs on the claime, or any other issue.

Plaintiffs' assertion that defendant's failure/refusal to pay underinsured motorist benefits until 2 ½ years after the jury verdict in plaintiffs' favor and their violation of the UTPA evidences a bad faith breach of contract also fails. First, the UTPA self-contains penalties for the failure to timely pay benefits. Plaintiffs were awarded those penalties. Plaintiffs' claim that the UTPA or the payment of penalties thereunder somehow provides an independent action for bad faith breach of contract for which damages are available would result, in essence, in a double penalty for the same conduct. Plaintiffs have provided no support for their allegation that this was an intended result by our Legislature, or that it would be a just and equitable result.

Second, the jury verdict in this case was reduced to a judgment in plaintiffs favor (including sanctions) on December 14, 2016. Defendant appealed to this Court, and on November 21, 2017, this Court issued its opinion reducing the jury verdict. *Andreson*, 322 Mich App 76. Thereafter, on March 22, 2018, the trial court entered an amended judgment to reflect this Court's decision. It appears that defendant paid this amended judgment a short time after it was entered.[1] Defendant thus did not delay in paying the judgment amount and plaintiffs have provided no evidence that they did so. Plaintiffs have thus presented no evidence that defendant acted in bad faith.

Affirmed. Costs are taxable against plaintiffs pursuant to MCR 7.219.


/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[1] Plaintiffs state that no payment was made *until* five months after this Court's November 2017 decision, indicating that payment was, in fact, made some time around April 2018.