*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF EMANUEL MALAJ, by Personal Representatives TOM MALAJ and ROLANT MALAJ,

UNPUBLISHED
July 16, 2020

　　　　Plaintiff-Appellant,

v

No. 348408
Macomb Circuit Court
LC No. 2017-002167-NI

CITIZENS INSURANCE COMPANY OF AMERICA,

　　　　Defendant-Appellee,

and

JOSEPH NARRA,

　　　　Defendant.

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Plaintiff, the Estate of Emanuel Malaj by its personal representatives, appeals by right orders of the circuit court granting summary disposition to defendant Citizens Insurance Company of America of plaintiff's first-party claim for uninsured motorist (UM) benefits and underinsurance motorist (UIM) benefits under the automobile insurance policy that Citizens issued to the Malaj family. In its order of June 11, 2018, the circuit court dismissed plaintiff's claim for UM benefits because the only vehicle involved in the fatal crash, a 2008 Jaguar, was insured by the Jaguar's constructive owners, Gregory and Dawn Bobchick (the Bobchicks). In its order of June 18, 2018, the circuit court dismissed plaintiff's claim for UIM benefits. We affirm.

## I. SUMMARY OF FACTS AND PROCEEDINGS

This case is one of several lawsuits arising out of a single-vehicle crash that occurred on May 8, 2015, involving a 2008 Jaguar titled in the name of Robert Cerrito, but possessed, used, and insured by the Bobchicks. The Jaguar was occupied by teenage high-school friends, including

-1-

plaintiff's decedent, Emanuel Malaj, along with Michael Wells, and Jonathan Manolios, who were also killed, and defendant Joseph Narra and Gregory Bobchick, Jr., who survived. The instant lawsuit was filed on June 13, 2017, setting forth claims of automobile negligence against defendant Narra as the alleged operator of the Jaguar, and for UM and UIM benefits against defendant Citizens. Plaintiff asserted that, although the subject insurance policy set forth limits of UM and UIM coverage of "$250,000 Each Person, $500,000 Each Occurrence," the estate should be paid the full $500,000 because there was a $250,000 UM claim *and* a $250,000 UIM claim. In support, plaintiff alleged that the Jaguar's owner, Robert Cerrito, was uninsured, and that other legally responsible persons, defendant Narra, Manolios, Bobchick, Sr., and Bobchick, Jr., were underinsured.

In another case, plaintiff entered a default against Robert Cerrito, the registered title holder of the Jaguar. Plaintiff also entered into settlement agreements with other potentially responsible parties in other lawsuits, and received a settlement of $100,000 from the Bobchicks' insurer Grange Insurance Company of Michigan, and a settlement of $166,666.67 from the Estate of Jonathon Manolios. After summary disposition was granted to defendant Citizens, plaintiff received a $100,000 settlement from Joseph Narra's insurer, Auto-Owners Insurance Company. This latter settlement resulted in the entry of the final order engendering the instant claim of appeal, on March 25, 2019.

In this case, plaintiff filed a motion for summary disposition under MCR 2.116(C)(10) regarding its claims against defendant[1] for UM and UIM benefits, asserting that each was separately covered by the policy. Plaintiff's theory was that it should recover $250,000 because Cerrito was an uninsured owner, and also $250,000, less the $100,000 settlement, because other responsible persons were underinsured.

In response, defendant asserted that the plain terms of its insurance policy precluded payment of both UM and UIM benefits under these facts. Defendant emphasized the policy provision that "[n]o one will be entitled to receive duplicate payments for the same elements of loss under any Uninsured Motorists coverage or loss under any Underinsured Motorists coverage provided by this endorsement," and argued that there could be no claim of UM benefits with respect to Cerrito, the uninsured title holder, because the Jaguar was not an uninsured motor vehicle for purposes of the policy because there was no dispute that the Bobchicks had insured the Jaguar at the time of the accident through Grange Insurance.

With respect to plaintiff's claim regarding UIM benefits, defendant argued that plaintiff had already received a settlement of $100,000 on behalf of the Bobchicks, and another settlement with regard to its claim against the Estate of Jonathon Manolios, which together exceeded the total per-person underinsurance policy limit of $250,000. Defendant additionally noted that plaintiff's claim against defendant Narra was still pending and that Narra had liability insurance with a policy limit of $100,000. Defendant argued that the terms of its policy specially precluded duplicate

---

[1] Because Citizens Insurance Company is the only defendant participating in this appeal, hereinafter in this opinion the unqualified use of the designation "defendant" will refer exclusively to Citizens.

recovery "for any element of loss for which payment had been made." Defendant requested that the trial court grant it, not plaintiff, summary disposition on the basis of the undisputed facts.

In its reply to defendant's response, plaintiff argued that the "or" between "Uninsured Motorist coverage" and "Underinsured Motorist coverage" in the duplicate payment exclusion, like the "or" between "uninsured motor vehicle" and "underinsured motor vehicle" in the pertinent coverage paragraph, meant that plaintiff could properly collect both UM benefits in connection with Cerrito and UIM benefits in connection with other responsible parties. Thus, plaintiff argued, the claims for up to $250,000 for each type of coverage were within the policy limits.

At the June 11, 2018 hearing on plaintiff's motion, the trial court ruled that plaintiff was not entitled to collect both UM and UIM benefits, stating, "if it's underinsured, it's underinsured. If it's uninsured, it's uninsured. It is not both." The trial court elaborated that the Bobchicks "were an owner, and the insurance that they maintained on the vehicle applied, and the Court is satisfied that we have an insured vehicle. There is no uninsured claim because we have an insured vehicle with an owner and that is all that is required." The trial court entered its order dismissing plaintiff's claim for UM benefits, and scheduled a hearing in one week to consider the claim for UIM benefits.

After the June 18, 2018 hearing, the trial court entered an order denying plaintiff's motion for summary disposition "for the reasons stated on the record" and granting defendant summary disposition pursuant to MCR 2.116(I)(2). Although no transcript of that proceeding is available, the parties agree that the trial court concluded that the limits of the defendant's policy coverage for UIM benefits had been exceeded by the total of settlements plaintiff had received from potentially responsible parties.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). When considering a fact-based motion, a trial court must view the proffered evidence in the light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Summary disposition is proper if the evidence, affidavits, pleadings, and admissions viewed in a light most favorable to the other party demonstrate that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Where "it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2). See also *Burkhardt v Bailey*, 260 Mich App 636, 661; 680 NW2d 453 (2004); *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005).

The proper interpretation of a contract and the legal effect of its provisions are questions of law reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 461, 464; 703 NW2d 23 (2005). Insurance contracts are construed in the same manner as other contracts. *Seils*, 310 Mich App at 145. When determining the meaning of a contract, a court must assign the words in the contract their "plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. Courts must apply the unambiguous terms of a contract as written. *Id*. at 461; *Group Ins Co of Mich v Czopek*, 440 Mich 590, 596-597; 489 NW2d 444 (1992).

A contract is ambiguous only when, after considering the entire contract, its words may reasonably be understood in different ways. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 566-568; 596 NW2d 915 (1999). "If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous . . . ." *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982). "Ambiguous provisions in an insurance contract are construed against the insurer and in favor of coverage." *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995). "However, this rule is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the [factfinder] unable to determine what the parties intended their contract to mean." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 471; 663 NW2d 447 (2003).

When interpreting an insurance policy a two-step analysis is employed: first, whether the insurance agreement generally provides coverage for the occurrence, and, if so, whether coverage is negated by an exclusion. *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 382; 565 NW2d 839 (1997). The insured bears the burden to prove coverage, while the insurer bears the burden of proving the applicability of an exclusion. *Heniser*, 449 Mich at 172; *Seils*, 310 Mich App at 146. "Exclusionary clauses in insurance policies are strictly construed in favor of the insured." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). But clear and specific exclusions must be enforced as written so that the insurance company is not held liable for a risk it did not assume. *Id*.; *Czopek*, 440 Mich at 597.

III. ANALYSIS

We conclude that the trial court correctly held that UM benefits were not available under the plain terms of the insurance policy on the ground that the only vehicle involved in the accident was insured. We further conclude that the trial court properly granted defendant summary disposition on the ground that there was no dispute that plaintiff received personal injury settlements arising from the single-vehicle accident that were greater than the insurance policy's applicable per-person coverage limit.

The automobile insurance policy that the Malaj family purchased from defendant and that was in effect at the time of the accident provided coverage for "Underinsured/Uninsured Motorist: $250,000 Each Person, $500,000 Each Occurrence." "Uninsured motorist insurance permits an injured motorist to obtain coverage from his or her own insurance company to the extent that a third-party claim would be permitted against the uninsured at-fault driver." *Rory*, 473 Mich at 465. "Neither uninsured motorist (UM) coverage nor UIM coverage is required by Michigan law, and therefore "the terms of coverage are controlled by the language of the contract itself, not by

-4-

statute." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 84; 910 NW2d 691 (2017). Although the insurance industry has included the word "motorist" in the short-hand labeling of such coverage, the focus of standard UM or UIM language is on motor vehicles involved in accidents and whether they are covered at all, or only inadequately covered, by liability insurance. See *Scott v Farmers Ins Exchange*, 266 Mich App 557, 562-563; 702 NW2d 681 (2005) ("The provision's title, 'Uninsured Motorist,' suggests that the section deals with the actions of an 'uninsured motorist.' Nevertheless, the substantive language focuses exclusively and unambiguously on whether the *vehicle* was insured at the time of the accident.").

> The policy in this case provided as follows:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" *or* "underinsured motor vehicle" because of "bodily injury":

> 1. Sustained by an "insured"; and

> 2. Caused by an accident.

> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" *or* "underinsured motor vehicle." [Emphasis added.]

These coverage terms plainly set forth several requirements for a UM or UIM claim. Plaintiff must be legally entitled to recover damages that its decedent sustained (1) from the owner or operator (2) of an "uninsured motor vehicle" *or* "underinsured motor vehicle" (3) caused by an accident (4) arising out of the ownership, maintenance or use of the "uninsured motor vehicle" *or* "underinsured motor vehicle." Accordingly, UM or UIM coverage arises from an owner's or operator's ownership or use of a motor vehicle that is either uninsured *or* underinsured. "[T]he term 'or' is 'used as a function word to indicate an alternative.' " *NL Ventures VI Farmington, LLC v Livonia*, 314 Mich App 222, 230; 886 NW2d 772 (2015), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed).

In this case, there is no dispute that plaintiff's decedent was killed in a single-vehicle crash of a 2008 Jaguar titled to Robert Cerrito but possessed and used by the Bobchicks and their son. It is also undisputed that before the accident the Bobchicks insured the Jaguar with Grange Insurance Company of Michigan, providing for liability coverage for personal injury up to $100,000 per person and $300,000 per accident, and that Grange settled plaintiff's liability claim against the Bobchicks for its policy limit of $100,000. The Jaguar was thus not an uninsured motor vehicle for purposes of defendant's UM coverage. Consequently, under the undisputed facts and the plain terms of defendant's insurance policy, the trial court correctly ruled that no UM coverage was available.

The trial court also properly granted defendant summary disposition of plaintiff's UIM claim on the basis that under the plain terms of the insurance policy the per-person limit of the UIM benefits available in connection with plaintiff's decedent, $250,000, had been exceeded by the total of the personal injury settlements plaintiff had received from potentially responsible

parties. It is undisputed that before the June 18, 2018 summary disposition hearing plaintiff settled the personal injury claim against the Bobchicks for $100,000, and also received a settlement of $166,666.67 from the Estate of Jonathon Manolios. Together, these two settlements exceeded the per-person limit of defendant's UIM coverage. Further, after the trial court's ruling, plaintiff received a $100,000 settlement from defendant Narra's insurer.

Contrary to plaintiff's argument, the policy's language stating that the "coverage limit for Uninsured/Underinsured Motorists Coverage applies separately to damages caused by an accident with an 'uninsured motor vehicle' and an 'underinsured motor vehicle' " is not material to this case because only one vehicle was involved in the accident. And because that vehicle was not uninsured, plaintiff could properly claim against defendant's policy only to the extent that the vehicle triggered the policy's coverage for "a land motor vehicle or trailer . . . to which a bodily injury bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."

The subject insurance policy includes the following provision:

> The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each accident for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

In other words, under the policy's plain terms, defendant's maximum liability to plaintiff for *all* bodily injury damages under the UM and UIM coverage was $250,000.

Moreover, contrary to plaintiff's argument, the policy also clearly allowed defendant to offset against its UIM liability sums that plaintiff was able to collect from others who were potentially liable to plaintiff as a result of the motor vehicle accident. Indeed, the purpose of UM and UIM coverage is to make the insured whole, at least up to policy limits, for damages that the insured is unable to collect from responsible parties because they lack sufficient insurance coverage. See *Rory*, 473 Mich at 465; *Andreson*, 322 Mich App at 85-86. Again, in this case, at the time of the motion hearing, plaintiff had collected in settlement of personal injury claims arising out of the accident $266,666.67 from potentially responsible parties.

The subject insurance policy, in setting forth the limits of its UM and UIM coverage, states that "[t]he limit of liability for this coverage shall be reduced by all sums paid or payable because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible. . . ." Those clear terms provide for a setoff of defendant's UIM liability of all sums that plaintiff was paid for bodily injury "by or on behalf of persons or organizations who may be legally responsible." Plaintiff's decedent obviously sustained bodily injury when he was killed in the accident, and the payments were made on behalf of persons "who may be legally responsible," the Bobchicks, Manolios, and eventually defendant Narra, even though the settlement agreements did not attribute legal responsibility to those persons. Because there was no dispute that plaintiff

-6-

received settlements arising from the single-vehicle accident for "bodily injury" that were greater than the insurance policy's limit of liability for UM and UIM benefits of $250,000 per person, defendant's liability was satisfied. See, e.g., *Andreson*, 322 Mich App at 85 ("All parties agree on appeal that plaintiffs' earlier settlement of $100,000 with the at-fault driver's insurance company entitled defendant to a $50,000 offset with respect to each plaintiff, limiting defendant's liability to $200,000 per plaintiff under plaintiffs' UIM policy provision.").

In sum, the trial court properly granted defendant summary disposition where there was no dispute that plaintiff received settlements for "bodily injury" that were greater than the subject policy's limit of UIM coverage, and the plain terms of the policy provided for reduction of defendant's liability by the amounts of such payments.

Because we conclude that the trial court properly dismissed plaintiff's claims against defendant for UM and UIM benefits for the reasons stated, we need not consider the parties' argument concerning whether plaintiff complied with notice-of-settlement provisions in the subject insurance policy. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues.").

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter