# STATE OF MICHIGAN

# COURT OF APPEALS

---

DEBRA K. ANDRESON and DAVID EDWARD
ANDRESON,

        Plaintiffs-Appellees,

v

PROGRESSIVE MARATHON
INSURANCE COMPANY,[1]

        Defendant,

and

PROGRESSIVE MICHIGAN
INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
November 21, 2017
9:00 a.m.

No. 334157
Eaton Circuit Court
LC No. 15-000168-NF

---

DEBRA K. ANDRESON and DAVID EDWARD
ANDRESON,

        Plaintiffs-Appellees,

v

PROGRESSIVE MARATHON
INSURANCE COMPANY,

        Defendant,

No. 336351
Eaton Circuit Court
LC No. 15-000168-NF

---

[1] Plaintiffs' complaint named both Progressive Michigan Insurance Company and Progressive Marathon Insurance Company as defendants. On June 5, 2015, the parties stipulated to dismiss Progressive Marathon from this action because the insurance policy in effect on the date of plaintiffs' accident was issued to plaintiffs by Progressive Michigan. Progressive Marathon did not participate in this matter at trial or on appeal. Accordingly, as used in this opinion, "defendant" refers to Progressive Michigan.

-1-

and

PROGRESSIVE MICHIGAN
INSURANCE COMPANY,

      Defendant-Appellant.
_____

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

O'BRIEN, J.

In Docket No. 334157, defendant appeals as of right the trial court's order awarding plaintiff Debra Andreson (Debra) $1,324,112.68 following a jury trial.[2] In Docket No. 336351, defendant appeals as of right the trial court's order awarding attorney fees and taxable costs to plaintiffs. We ordered these appeals to be consolidated.[3] We reverse in part and remand for entry of a judgment in favor of Debra and against defendant in the amount of $200,000. In all other respects, we affirm.

On October 11, 2013, plaintiffs were stopped in their vehicle at a red light when it was struck from behind by a different vehicle driven at a high rate of speed. Both plaintiffs suffered injuries as a result of the collision, and it was uncontested that plaintiffs were not at fault. Plaintiffs were insured by defendant at the time of the accident, and their insurance policy included a provision for underinsured motorist (UIM) benefits in the amount of $250,000 per individual, capped at a total of $500,000 per accident. The UIM contract provision required plaintiffs to pursue recovery from the at-fault driver and obtain the maximum policy limits from the at-fault driver's insurance carrier before they could collect UIM coverage from defendant. It also required plaintiffs to obtain defendant's permission before reaching a settlement with the at-fault driver or the at-fault driver's insurance carrier.

Defendant initially declined to grant plaintiffs permission to settle with the at-fault driver's insurance carrier. On February 18, 2015, plaintiffs filed this lawsuit against defendant in an attempt to obtain that permission. Eventually, defendant agreed to grant plaintiffs permission to settle. The parties agree that plaintiffs obtained a settlement of $100,000 from the at-fault driver's insurance carrier, the maximum limit of that policy, allocated at $50,000 per plaintiff.

After the settlement, plaintiffs sought payment from defendant for the difference between the maximum amount of their UIM coverage and the settlement amount. Defendant refused to pay plaintiffs' UIM benefits, arguing that plaintiffs' injuries failed to qualify as threshold

---

[2] The trial court also entered an award in favor of David Andreson, which defendant does not challenge on appeal.

[3] *Andreson v Progressive Michigan Ins Co*, unpublished order of the Court of Appeals, entered January 18, 2017 (Docket Nos. 334157 and 336351).

injuries. With respect to Debra, defendant alleged that her lower back injuries arose from a pre-existing condition and were not causally related to the October 11, 2013 accident. The case proceeded to trial, at which the central issues were (1) whether plaintiffs suffered serious impairments of body function as a result of the at-fault driver's negligence and (2) whether Debra's lower back injuries were causally related to the auto accident. Before trial, defendant filed a motion in limine to preclude the jury from being told the UIM policy limits. The trial court granted defendant's motion, finding that "[a]ny evidence of the UIM policy limits, if relevant, would be more prejudicial than probative under MRE 403."

Testimony at trial indicated that Debra suffered various physical injuries as a result of the auto accident. Her neurosurgeon, Dr. Christopher Abood, testified that he had served as Debra's treating physician since October 2008 when she first came to him complaining of low back pain. Dr. Abood indicated that, although she was experiencing pain at that time (five years before the auto accident), the pain was manageable and was not preventing her from working or living her normal life. Dr. Abood did not see Debra for the five-year period from October 2008 to August 2013. During that time, she received a series of facet injections from a different doctor to whom Dr. Abood had referred her for treatment.[4] Debra returned to see Dr. Abood on August 22, 2013, indicating that she had fallen on her back and experienced a significant increase in pain and heaviness in both legs, which severely limited her ability to walk any distance. Dr. Abood diagnosed the pain as coming from a narrowing of the spinal canal.

Dr. Abood next saw Debra on November 11, 2013, after she was in the accident at issue. At that time, she was experiencing severe pain in her back and legs. Dr. Abood testified that, in his medical opinion, the increased low back pain was not related to her earlier fall. According to Dr. Abood, Debra's "spinal condition was severely aggravated by the automobile accident, causing severe worsening of her back and leg symptoms and pain." Dr. Abood recommended that Debra have back surgery, which he performed on December 11, 2013.

At the close of proofs, the trial court found a jury-submissible question of fact as to whether Debra's injuries met the threshold.[5] The jury ultimately found that they did and awarded her $1,374,112.68 in damages.

After trial, plaintiffs' counsel filed a proposed judgment for $1,324,112.68 for Debra, which reflected the jury's special verdict minus $50,000 to reflect the setoff from the earlier settlement. On May 19, 2016, defendant filed an objection to the entry of judgment with respect to Debra, arguing that the judgment in her favor should be limited to $200,000 because her

---

[4] Facet injections involve an injection of a local anesthetic into the joint to temporarily deaden a small nerve. This is a diagnostic procedure, designed to determine if a patient would benefit from a rhizotomy, a procedure that permanently deadens the same nerve.

[5] On the last day of trial, the trial court granted a directed verdict to David pursuant to MCL 500.3135(2)(a)(*i*), finding that there was no factual dispute concerning the nature and extent of his injuries and that he had suffered a serious impairment of body function. Defendant does not challenge that ruling on appeal.

recovery was capped by the $250,000 UIM policy limit minus the $50,000 setoff. Following a hearing, the trial court determined that it was required to enter a judgment consistent with MCR 2.515(B), which provides that "[a]fter a special verdict is returned, the court shall enter judgment in accordance with the jury's findings." Accordingly, the trial court entered a judgment in favor of Debra for $1,324,112.68, which reflected the jury's award minus the $50,000 settlement offset. Defendant filed a motion for remittitur, arguing that the jury's verdict must be reduced because it was more than the UIM policy limits. The trial court denied defendant's motion.

On appeal, defendant argues that the trial court abused its discretion by denying its motion for remittitur. We agree.[6] Appellate review of a grant or denial of remittitur is limited to the determination of whether an abuse of discretion occurred. *Majewski v Nowicki*, 364 Mich 698, 700; 111 NW2d 887 (1961). A trial court abuses its discretion when it chooses an outcome outside of the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

"Broadly defined, remittitur is the procedural process by which a verdict of the jury is diminished by subtraction." *Pippen v Denison*, 66 Mich App 664, 674; 239 NW2d 704 (1976) (emphasis omitted). "As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside." *Id*. at 675 (citation and quotation marks omitted).

> In determining whether remittitur is appropriate, a trial court must decide whether the jury award was supported by the evidence. *Diamond v Witherspoon*, 265 Mich App 673, 693; 696 NW2d 770 (2005). This determination must be based on objective criteria relating to the actual conduct of the trial or the evidence presented. *Palenkas v Beaumont Hosp*, 432 Mich 527, 532; 443 NW2d 354 (1989). The power of remittitur should be exercised with restraint. *Hines v Grand Trunk W R Co*, 151 Mich App 585, 595; 391 NW2d 750 (1985). If the award for economic damages falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation, the jury award should not be disturbed. *Palenkas, supra* at 532-533. [*Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 462; 750 NW2d 615 (2008).]

Defendant argues that the trial court erred in denying its motion for remittitur because the verdict awarded by the jury was in excess of the UIM policy limits. Neither uninsured motorist (UM) coverage nor UIM coverage is required by Michigan law, and, therefore, "the terms of coverage are controlled by the language of the contract itself, not by statute." *Dawson v Farm Bureau*, 293 Mich App 563, 568; 810 NW2d 106 (2011). As our Supreme Court has explained, "Uninsured motorist coverage is optional—it is not compulsory coverage mandated by the

---

[6] We acknowledge that there may be a question regarding whether the trial court's decision to enter an award less than the full jury award was contrary to MCR 2.515(B). However, neither party raised this issue on appeal, and, in light of our ruling, it is not relevant to the disposition of this case.

no-fault act," and as such, "the rights and limitations of such coverage are purely contractual . . . ." *Rory v Continental Ins Co*, 473 Mich 457, 465-466, 703 NW2d 23 (2005). "It is not the province of the judiciary to rewrite contracts to conform to the court's liking, but instead to enforce contracts as written and agreed to by the parties." *Dawson*, 293 Mich App at 569.

Prior to trial, the trial court stated that plaintiffs were pursuing a "Breach of Contract claim against Defendant for the refusal to pay UIM protection benefits without explanation." Per the terms of the parties' contract, defendant was only liable for $250,000 per plaintiff, up to a total of $500,000. All parties agree on appeal that plaintiffs' earlier settlement of $100,000 entitled defendant to a $50,000 offset with respect to each plaintiff, meaning that defendant's liability was limited to $200,000 per plaintiff under plaintiffs' UIM policy.

In denying defendant's motion for remittitur, the trial court concluded "that the jury's verdict cannot be looked at as being clearly excessive" because "the jury was not made aware of the [UIM coverage] limits at the request of" defendant. Essentially, the trial court found that defendant waived the UIM policy limits by requesting that the policy limits not be disclosed to the jury. However, pursuant to this Court's decision in *Tellkamp v Wolverine Mut Ins Co*, 219 Mich App 231, 243; 556 NW2d 504 (1996), "[a]bsent an express agreement to the contrary," either parties' decision to not inform the factfinder of a policy's limit "does not amount to a waiver of the limits of liability under the contract."[7] In this case, there was no express agreement between the parties to waive the UIM policy limits. Nor did defendant, through its counsel or otherwise, expressly waive the policy limits.[8] Thus, the trial court could not enter an award for Debra that exceeded the maximum liability agreed to by the parties in their contract, see *Dawson*, 293 Mich App at 568-569, plus applicable interest and costs, see *Tellkamp*, 219 Mich App at 244.

Alternatively, we are persuaded by defendant's argument that the trial court's refusal to reduce the amount of the jury verdict to the maximum policy limits amounts to a nullification of the policy limits, effectively creating insurance coverage by estoppel contrary to *Kirschner v Process Design Assocs, Inc*, 459 Mich 587; 592 NW2d 707 (1999). In insurance cases, "[t]he application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the

---

[7] We recognize that this portion of *Tellkamp* is arguably dicta. However, even assuming that it is dicta, we adopt this portion of the *Tellkamp* panel's reasoning as our own. See *Gallagher v Keefe*, 232 Mich App 363, 373-374; 591 NW2d 297 (1998).

[8] Plaintiffs point to several statements made during the course of trial to assert that defendant waived the UIM policy limits. Some of the statements that plaintiffs point to were made during the course of trial by a witness that worked for defendant, and others were made by defendant's counsel during opening statements. After reviewing these statements, especially in light of the trial court's ruling that the policy limits not be disclosed to the jury, we cannot conclude that the statements amounted to "a voluntary and intentional abandonment of a known right." *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003).

policy or that were expressly excluded from the policy." *Id*. at 593-594. "This is because an insurance company should not be required to pay for a loss for which it has charged no premium." *Id*. at 594. Defendant contracted with plaintiffs to insure them up to $500,000 for UIM coverage, and plaintiffs paid premiums to be covered up to that amount. In the absence of defendant's waiver of these limits, the trial court impermissibly required defendant to pay for Debra's loss in excess of the amount that it agreed to cover. Accordingly, we reverse the trial court's denial of defendant's motion for remittitur and remand for entry of a judgment in favor of Debra in the amount of $200,000.

Next, defendant argues that it is entitled to a new trial based upon the trial court's evidentiary rulings to allow defendant's adjuster, Marsha Vandercook, to testify (1) regarding the contents of her claims log notes and (2) whether Debra suffered a serious impairment of body function. We disagree. The grant or denial of a motion for a new trial is within the sound discretion of the trial court. *Bartlett v Sinai Hosp of Detroit*, 149 Mich App 412, 418; 385 NW2d 801 (1986). "A trial court's discretionary decisions concerning whether to admit or exclude evidence will not be disturbed absent an abuse of that discretion." *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010) (citation and quotation marks omitted). An abuse of discretion occurs when the trial court's decision to admit or exclude evidence falls outside the range of reasonable and principled outcomes. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). "The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982).

Several months before trial, plaintiffs brought a motion to strike defendant's answer and to enter a default against defendant, in part, because defendant refused to produce Vandercook's claims log notes. The trial court conducted an in camera review of the insurance claims log and found as follows:

> [T]he adjuster's log is partially privileged and partially discoverable. Specifically, all log notes entered after February 16, 2015 are privileged, and all log notes entered on or before February 16, 2015 are subject to discovery.

The week before trial, plaintiffs' counsel served defendant with a subpoena for Vandercook to testify at trial, and defendant moved to quash the subpoena. After a hearing on defendant's motion, the trial court ruled that Vandercook could testify regarding a notation she made in her claims log in which she indicated that she thought Debra's injuries had met the serious impairment threshold. In its reasoning, the trial court relied on MRE 701 and its determination that the claims log was not hearsay because it qualified as a business record under MRE 803(6).

At trial, plaintiffs called Vandercook to testify during their case-in-chief. Vandercook testified in pertinent part that, as part of her job with defendant, she routinely evaluated the injuries of people insured by defendant, and that she did so by relying on each person's medical records and history of medical treatment. She testified that neither she nor a doctor could make a determination as to whether serious impairment of body function occurred because only the jury could make that determination. Outside the presence of the jury, defendant objected to Vandercook testifying about whether Debra suffered a serious impairment, arguing that "[s]he has deferred to the jury on the issue of serious impairment" and it was not "appropriate opinion

testimony from a lay witness because it actually [called] for a medical expertise, which Ms. Vandercook simply [did] not have." The trial court rejected defendant's argument, reiterating its earlier ruling that the lay opinion testimony was admissible under MRE 701. Vandercook went on to testify that she wrote in her claims log that, given the acute findings in the emergency room and the fact that Debra underwent surgery, there was "enough to support SIBF" regarding the chest, neck, and low back injuries suffered by Debra. Vandercook clarified that this note in her claims log "was a preliminary assessment [that she] made based on the records [she] had at that time." On cross-examination, Vandercook testified that her statement in her claims log was based on an assumption that Debra's lower back surgery was related to the accident. Vandercook testified that, although she initially thought Debra had suffered serious impairments of body function, she changed her mind when she obtained the medical files from Dr. Abood because those records indicated that the lower back surgery was not related to the accident but was necessitated by a pre-existing lower back injury.

On appeal, we must determine whether the trial court abused its discretion by admitting Vandercook's testimony regarding her claims log and her initial conclusion that Debra had suffered a threshold injury as lay opinion testimony under MRE 701. Though Vandercook is not a doctor, she testified that she had significant experience in reviewing medical documentation for defendant, she had approved payment of approximately 100 auto accident claims, and she had approved payment of those claims after determining that the insured had suffered a serious impairment of body function. MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Because Vandercook's testimony was based on her review of medical records in the ordinary course of her employment, the opinion expressed in her claims log was rationally based on her perceptions, was helpful to a clear understanding of her trial testimony, and was helpful to the determination of whether Debra suffered a serious impairment of body function. Though this is certainly a close evidentiary decision, our review of this matter is limited to whether the trial court abused its discretion, and we cannot conclude on the record before us that the trial court's decision on this close evidentiary decision fell outside the range of reasonable and principled outcomes. *Hecht*, 499 Mich at 604; *Golochowicz*, 413 Mich at 322.

But even if the trial court should not have admitted the adjustor's testimony regarding her claims log and initial conclusions, defendant failed to show that it was more probable than not that the alleged error was outcome determinative. *Barnett v Hidalgo*, 478 Mich 151, 172; 732 NW2d 472 (2007); see also MCR 2.613(A). On cross-examination, Vandercook went into detailed development about the meaning of her note. Vandercook testified that she wrote the note under the assumption that Debra's injuries were related to the accident. She clarified that her initial assessment was made before receiving Debra's medical files from Dr. Abood, and that she changed her opinion after reviewing those files. The files showed that Debra had a history of lower back pain that was severely aggravated two months before the accident at issue. Based on Vandercook's explanation, the jury was not left with the impression that the note in her claims log reflected her final assessment of whether Debra's injury qualified as a serious impairment,

-7-

and defendant has failed to otherwise establish that it was more probable than not that the alleged error was outcome determinative.

Defendant also argues that Vandercook's testimony was inadmissible because the existence of a threshold injury is a legal conclusion, and witness testimony regarding a legal conclusion is improper. However, the authority relied on by defendant for this assertion provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Downie v Kent Products, Inc*, 420 Mich 197, 204-205; 362 NW2d 605 (1984), amended 421 Mich 1202 (1985) (citation and quotation marks omitted). "The admissibility of such a statement should not be questioned merely because the determination of liability may turn on whether the jury believes or disbelieves that opinion." *Id*. at 206. The admissibility of Vandercook's claims log entry, wherein she expressed an opinion that Debra had suffered a serious impairment of body function, is not rendered inadmissible simply because the jury may have believed Vandercook's initial evaluation of the seriousness and extent of Debra's injuries. Accordingly, we conclude that the trial court's denial of defendant's motion for a new trial based on the admission of Vandercook's testimony was not an abuse of discretion.

Lastly, defendant argues that the trial court abused its discretion in awarding attorney fees to plaintiffs under the offer of judgment rule, MCR 2.405(D)(1). We disagree. "We review for an abuse of discretion a trial court's award of attorney fees and costs." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

Before trial, the parties participated in case evaluation, which resulted in a non-unanimous award. Defendant filed an offer of judgment for $10,000 with respect to David and $50,000 with respect to Debra. Plaintiffs filed counteroffers of judgment for $150,000 with respect to David and $200,000 with respect to Debra. None of the offers of judgment were accepted. Pursuant to MCR 2.405, the average offer of judgment was $80,000 with respect to David and $125,000 with respect to Debra. Following a four-day jury trial in which verdicts were rendered in favor of both plaintiffs, the trial court entered an award of $179,481.65 for David and $1,324,112.68 for Debra.

On July 20, 2016, plaintiffs filed a motion for award of attorney fees pursuant to the offer of judgment rule under MCR 2.405(D)(1). Plaintiffs requested $135,650 in attorney fees and $15,465.67 in taxable costs. Defendant opposed the motion, arguing that the trial court should decline to award attorney fees pursuant to the "interest of justice" exception set forth in MCR 2.405(D)(3). MCR 2.405(D) provides, in pertinent part, as follows:

(D) Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:

(1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.

\* \* \*

-8-

(3) The court shall determine the actual costs incurred. *The court may, in the interest of justice, refuse to award an attorney fee under this rule.* [Emphasis added.]

On December 14, 2016, the trial court entered an order granting in part and denying in part plaintiffs' motion for award of attorney fees and costs, awarding $120,820 in attorney fees and $7,840.67 in taxable costs. The trial court specifically rejected defendant's argument that the trial court should deny plaintiffs' motion based on the interests of justice exception set forth in MCR 2.405(D)(3). The trial court reasoned as follows:

> After review, this Court finds that the interest of justice exception does not apply in the present case because the public policy of litigating the legal issues of first impression in this case do not override the weight of MCR 2.405 in promoting a just, speedy, and economical determination of every action. MCR 1.105. Additionally, the issues of first impression were litigated and decided prior to the Counteroffers of Judgment. The only fee requested for time expended on those issues was 3.80 hours utilized on a Motion for Reconsideration of the Court's March 14, 2016 Order Excluding Evidence of the Prior Settlement Amount and the UIM Policy Limits, by Plaintiffs' counsel, Mr. Nolan, on April 4, 2016 for a total of $2,280.00. The Motion for Reconsideration was denied by the Court in an Order dated April 5, 2016. Further, Plaintiffs' requested attorney fees only began to accrue on March 22, 2016, which was 21 days after the Counteroffers of Judgment were filed with the Court; therefore, Defendant had expressly rejected the Counteroffers of Judgment at that time pursuant to MCR 2.405(C) and all requested attorney fees, except the $2,280.00 expended on the Motion for Reconsideration, were actually necessitated by Defendant's refusal to accept the Counteroffers of Judgment. Thus, Plaintiffs are entitled to their actual fees including attorney fees less the $2,280.00 pursuant to MCR 2.405(D)(1).

"The purpose of MCR 2.405 is to encourage settlement and to deter protracted litigation." *Sanders v Monical Machinery Co*, 163 Mich App 689, 693; 415 NW2d 276 (1987). In *Sanders*, this Court stated that MCR 2.405(D) "should, in our opinion, be routinely enforced and attorney fees granted." *Id*. at 692. As such, a grant of attorney fees under MCR 2.405(D) "should be the rule rather than the exception." *Butzer v Camelot Hall Convalescent Centre, Inc (After Remand)*, 201 Mich App 275, 278; 505 NW2d 862 (1993). "To conclude otherwise would be to expand the 'interest of justice' exception to the point where it would render the rule ineffective." *Id*. at 278-279. "What constitutes 'in the interest of justice' must be decided on a case-by-case basis." *Lamson v Martin*, 216 Mich App 452, 463; 549 NW2d 878 (1996).

Defendant points to *Luidens v 63rd Dist Court*, 219 Mich App 24, 35; 555 NW2d 709 (1996), for the assertion that "a case involving a legal issue of first impression or a case involving an issue of public interest that should be litigated are examples of unusual circumstances in which it might be in the 'interest of justice' not to award attorney fees under MCR 2.405." However, defendant admits in its appellate brief in Docket No. 336351 that "[t]he central issue at trial was whether the Plaintiffs suffered 'threshold injuries' as a result of the at-fault driver's negligence." There was no issue of first impression related to the question of whether either plaintiff suffered a serious impairment of body function. Further, there was no

issue of first impression as to the discoverability of the insurance adjuster's claims log, the admissibility of testimony concerning the contents of that claims log, or the admissibility of the adjuster's testimony regarding her initial conclusion that Debra had suffered serious impairments of body function. The only legal issue that the trial court described as an issue of first impression was the question of whether, in a UIM case, the amount of the UIM policy limits should be admitted into evidence. The trial court resolved that issue in defendant's favor by ruling that the amounts of plaintiffs' UIM policy were not admissible at trial. Therefore, the issue of first impression did not impact the jury's decision that both plaintiffs had suffered serious impairments of body function, nor did it not impact the jury's decision to award plaintiffs damages.

Defendant argues that the issue of first impression regarding the admissibility of the UIM policy limits impacted the settlement value of the case and, therefore, impacted the offers of judgment. However, at the time the offers of judgment were made, both defense counsel and plaintiffs' counsel stated on the record that they believed the maximum amount either plaintiff could recover from defendant pursuant to the UIM policy was $200,000 each. Therefore, the admissibility of the UIM policy limits clearly did not impact the settlement value of the case for purposes of the offers and counteroffers of judgment. Accordingly, plaintiffs still qualify for an award of attorney fees under MCR 2.405(D)(1),[9] and we affirm the trial court's award of attorney fees to plaintiffs.

Docket No. 334157 is reversed in part and remanded to the trial court to enter judgment in favor of Debra and against defendant in the amount of $200,000. In all other respects, Docket Nos. 334157 and 336351 are affirmed. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Thomas C. Cameron

---

[9] We note that, even after Debra's award is adjusted to reflect the UIM policy limits, she is still entitled to costs pursuant to MCR 2.405(1).

-10-