*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JANET L. PARKS, by DOWAYNE F.
PARKS, Personal Representative,

UNPUBLISHED
December 17, 2020

Plaintiff-Appellee,

v

No. 349546
Isabella Circuit Court
LC No. 17-014166-NI

JOE K. SANDY,

Defendant,

and

PIONEER STATE MUTUAL INSURANCE
COMPANY,

Defendant-Appellant.

Before: O'BRIEN, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant Pioneer State Mutual Insurance Company appeals by leave granted[1] the trial
court order granting plaintiff's motion to reinstate an uninsured motorist coverage (UIM) claim
against Pioneer. For the reasons stated in this opinion, we reverse and remand for entry of an order
dismissing plaintiff's UIM claim against Pioneer.

## I. BASIC FACTS

On October 9, 2016, Janet Parks was walking in a parking lot when Joe Sandy struck her
with his motor vehicle. Parks died of her injuries, and plaintiff, as Parks's estate's personal
representative, brought a wrongful death suit against Sandy. Plaintiff also brought suit against
Pioneer, alleging that Parks had a UIM policy with a provision for a $250,000 maximum limit and

---

[1] *Estate of Janet L. Parks v Sandy*, unpublished order of the Court of Appeals, entered November
5, 2019 (Docket No. 349546).

that Sandy was "underinsured for residual tort liability." Because Sandy's insurance policy's maximum limit for bodily injury liability was $100,000, plaintiff sought to recover from Pioneer any damages in excess of $100,000.

Relevant to this appeal, Section 5 of Park's insurance policy included the following UIM provisions:

> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of bodily injury":
>
> 1. Sustained by an "insured"; and
>
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".
>
> We will pay under this coverage only if 1, and 2, below applies:
>
> 1. The limits of liability under any Bodily Injury Liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; and
>
> 2. The "insured" or legal representative seeking underinsured benefits under this coverage section has requested and we have provided written consent to the insured or legal representative's acceptance of any judgment or settlement.
>
> We will not be bound by any judgment obtained or settlements for damages made without our written consent.

The policy defines an "underinsured motor vehicle" as "a land motor vehicle . . . to which a Bodily Injury Liability . . . policy applies at the time of the accident but its limit for Bodily Injury Liability is less than the limit of liability for this coverage."

Before trial, plaintiff and Pioneer stipulated to dismiss without prejudice plaintiff's UIM claim against Pioneer.[2] Consequently, only plaintiff's wrongful-death claim against Sandy

---

[2] On appeal, plaintiff contends that Pioneer refused to consent to allow plaintiff to settle with Sandy for Sandy's policy limits. Plaintiff implies that Pioneer was engaging in gamesmanship by refusing to consent to a settlement, thereby forcing plaintiff to litigate its claim against Sandy before it could proceed with its claim against Pioneer. However, we note that plaintiff could have taken alternative actions, such as filing suit against Pioneer to obtain permission to settle with Sandy. See *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 80-81; 910 NW2d 691 (2017) (noting that after the UIM insurer declined to consent to settlement the plaintiff filed suit to obtain that permission). See also *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich

proceeded to a jury trial. Following the trial, the jury found that Sandy was negligent, that Parks was 50% comparatively negligent, and that Parks's damages arising from the motor-vehicle accident were $200,000. Because of the jury's comparative-negligence determination, the trial court entered a judgment of $100,000 against Sandy.

As required by the UIM policy, plaintiff sent a letter to Pioneer requesting that Pioneer "consent to accept the Judgment." Pioneer replied in writing that plaintiff had "permission to accept payment . . . in the amount of the Judgment together with interests and costs." Subsequently, plaintiff filed a motion to reinstate its UIM claim against Pioneer. Plaintiff argued that because the $100,000 judgment against Sandy exhausted his policy limits and because Pioneer had consented to the judgment, plaintiff was free to pursue its claim for UIM benefits against Pioneer. Pioneer opposed the motion, arguing in relevant part that plaintiff's claim for UIM benefits was barred by the doctrine of collateral estoppel. Pioneer asserted:

> [C]ollateral estoppel would bar Plaintiff's claim against Defendant Pioneer . . . because Plaintiff's claims for compensation arising out of this subject accident were fully and fairly litigated during the trial involving Defendant Joe. K. Sandy, where it was determined by a jury that the extent of Plaintiff's damages, recoverable in this action was $100,000. That sum, and any costs payable to Plaintiff as a result of the jury verdict will be fully paid by the insurance carrier for Defendant Joe K. Sandy.

In response, plaintiff argued that collateral estoppel did not bar reinstating the claim because plaintiff was "not seeking double recovery" from Pioneer, but was seeking "excess damages that are owed to [plaintiff] above and beyond Defendant Sandy's liability policy limit." Plaintiff also noted that Parks's UIM policy expressly provided that Pioneer "will not be bound by any judgment or settlements for damages made without our written consent." Plaintiff argued that "if [Pioneer] was not going to be bound by any judgment of the jury in the first action, then Plaintiff should also not be bound by the same."

Following oral argument, the trial court issued a written opinion and order granting plaintiff's motion to reinstate. The court concluded that collateral estoppel was inapplicable because the jury had found in plaintiff's favor when it found that Sandy was negligent. In addition, the court held that Pioneer's attempt to bind plaintiff to "the same judgment" that Pioneer had "no intention of being bound by" was contrary to public policy. The trial court reasoned that Pioneer had "sought two bites at the apple in this case, using the law as both a sword and shield." The court explained:

---

127, 136-137; 393 NW2d 161 (1986) (recognizing that insurers have an implied duty to act in good faith, and defining "bad faith" as conduct that is "arbitrary, reckless, indifferent, or [that is an] intentional disregard of the interests of the person owed a duty."). Thus, if plaintiff believed that Pioneer was acting in bad faith when it denied consent to settle, plaintiff could have brought a claim alleging the same. Given that plaintiff never pursued a claim against Pioneer based upon Pioneer's failure to consent to settlement prior to the jury trial, the record is devoid of any evidence supporting that Pioneer was engaging in gamesmanship at the expense of its insured.

As affirmed by counsel for Pioneer at the motion hearing, Pioneer always contemplated the possibility of a second jury trial. If, at the first trial, the jury had awarded plaintiff more than the $100,000.00 limit of Mr. Sandy's policy, Pioneer could have used the law and its policy language as a shield, refused to be bound by the jury verdict, and forced a second trial. Now, because the jury returned a verdict of $100,000.00, Pioneer is attempting to use the law as a sword by forcing plaintiff to be bound by the jury's verdict even though plaintiff would not have been able to hold Pioneer to the jury verdict had it been more favorable to plaintiff. Such a result would be unconscionable, against Pioneer's own contractual agreement, and against public policy. Plaintiff entered into a contract with Pioneer for underinsured motorist coverage, purchasing insurance above the minimum state mandated coverage. If Pioneer is able to use the law as both a sword and a shield in this way, plaintiff's contract with Pioneer would be illusory, which would be a clear violation of public policy.

Thereafter, the trial court denied Pioneer's motion for reconsideration, clarifying that it had not made "any ruling that the insurance policy was actually unconscionable or violative of public policy." Instead, the court "simply stated that certain circumstances may render it so." The trial court added that its "ruling was not solely or even principally based on these public policy concerns."

## II. COLLATERAL ESTOPPEL

### A. STANDARD OF REVIEW

Pioneer argues that because collateral estoppel bars plaintiff's claim, the trial court erred by reinstating plaintiff's claim for UIM benefits. This Court reviews for an abuse of discretion the trial court's decision to reinstate a claim. *Wickings v Article Enterprises, Inc*, 244 Mich App 125, 138; 624 NW2d 197 (2000). A court abuses its discretion when its decision is "outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). We also review de novo the application of collateral estoppel. *Radwan v Ameriprise Ins Co*, 327 Mich App 159, 164; 933 NW2d 385 (2018). In addition, the interpretation of an insurance policy is reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### B. ANALYSIS

Because UIM coverage is not required by Michigan law, "the terms of coverage are controlled by the language of the contract itself, not by statute." *Dawson v Farm Bureau Mut Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011). Parks's insurance policy provides UIM benefits *up to* $250,000. Yet, before any benefits are available under the policy, a number of prerequisites must be satisfied, including that Pioneer must only pay compensatory damages that plaintiff is "legally entitled to recover" from the owner or operator of an underinsured motor vehicle. In order to qualify as an underinsured motor vehicle, the vehicle involved in the crash must be "a land motor vehicle . . . to which a Bodily Injury Liability . . . policy applies at the time of the accident but its limit for Bodily Injury Liability is *less than the limit of liability for this coverage.*" Here, as Sandy's bodily injury liability policy limit was $100,000 and the UIM policy had a limit of $250,000, Sandy's vehicle qualified as an underinsured motor vehicle. However,

because plaintiff may only recover compensatory damages that it is "legally entitled to recover from" Sandy, a determination of the amount owed under the policy is inextricably linked to a determination of the amount of damages plaintiff is "legally entitled to recover" from Sandy.

A jury determined that Sandy was negligent, that Parks was 50% comparatively negligent, and that plaintiff's damages were $200,000. Thus, when the damage award is reduced to account for Parks's comparative negligence, the jury's verdict represents a finding that the compensatory damages that plaintiff is "legally entitled to recover" from Sandy is $100,000. Because Sandy's bodily injury liability policy limit was $100,000, following entry of the $100,000 judgment against Sandy, plaintiff successfully recovered the exact amount of compensatory damages that it was legally entitled to recover against Sandy.

Notwithstanding the jury's verdict, plaintiff now seeks to have a second trial, this time against Pioneer. Plaintiff appears to hope that, following a second trial, it will receive a verdict indicating that the amount of compensatory damages that it can recover from Sandy will be in excess of Sandy's $100,000 policy, thereby allowing plaintiff to collect additional money under the UIM policy.[3] Pioneer argues that collateral estoppel bars plaintiff's claim for UIM benefits because the issue of what damages plaintiff was legally entitled to recover was actually litigated in the first action, plaintiff had a full and fair opportunity to litigate the issue, and mutuality of estoppel is not required because Pioneer is using collateral estoppel defensively against a party who had a fair and full opportunity to litigate the issue.

"Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *In re Application of Indiana Michigan Power Co to Increase Rates*, 329 Mich App 397, 408; 942 NW2d 639 (2019) (quotation marks and citation omitted). "Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel." *Radwan*, 327 Mich App at 165-166 (quotation marks and citation omitted). Mutuality of estoppel generally requires the party "taking advantage of the earlier adjudication" to have been "bound by [the earlier action] had it gone against him." *Monat v State Farm Ins Co*, 469 Mich 679, 684-685; 677 NW2d 843 (2004) (quotation marks and citation omitted).

The first two requirements of collateral estoppel have been met. In the earlier action, the amount of compensatory damages that plaintiff was legally entitled to recover from Sandy was actually litigated and determined by a valid and final judgement. See *Rental Props Owners Ass'n*

---

[3] On appeal, it is not clear whether plaintiff wishes to pick and choose which aspects of the first jury's verdict are binding and which are not, or whether plaintiff wants to completely redo the first trial, this time against a different defendant. For example, it is unclear whether plaintiff wishes to once again litigate whether Sandy was negligent and whether Parks was comparatively negligent. What is clear is that plaintiff wishes to relitigate the issue of damages, i.e., for a redetermination of the amount of compensatory damages that it is entitled to recover from Sandy, the owner or operator of the underinsured motor vehicle.

*of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014) (noting that a question of fact is not "actually litigated" unless it is "put into issue by the pleadings, submitted to the trier of fact, and determined by the trier."). Given that the question of fact actually litigated in the first action—the amount of damages plaintiff is legally entitled to recover from Sandy—is identical, not merely similar to an essential element of plaintiff's UIM claim against Pioneer, see *id*. (stating that the issue in the two actions "Must be identical, and not merely similar"), the first requirement for application of collateral estoppel is plainly satisfied. Moreover, there is nothing on the record suggesting that plaintiff had anything short of a full and fair opportunity to litigate the amount of damages that it was legally entitled to recover from Sandy during the first action. Thus, on this record, we may only conclude that plaintiff did, in fact, have a full and fair opportunity to litigate the issue during the earlier action, thereby satisfying the second prerequisite to the application of collateral estoppel.

The parties dispute whether the third requirement—mutuality of estoppel—is required before collateral estoppel will apply in this case. Yet, resolution of that question is plainly governed by our Supreme Court's decision in *Monat*. The *Monat* Court concluded that when "collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, *mutuality is not required*." *Monat*, 469 Mich at 680-681 (emphasis added); see also *Radwan*, 327 Mich App at 166 (applying *Monat*). Here, because Pioneer is seeking to assert collateral estoppel defensively against plaintiff and because plaintiff has already had a full and fair opportunity to litigate the issue of damages, mutuality is not required.

On appeal, plaintiff seeks to distinguish *Monat* so as to prevent its application. The distinctions, however, are not meaningful. In *Monat*, the jury returned a verdict of no cause of action, whereas in this case the jury in the first action found that plaintiff had satisfied each element of its negligence claim against Sandy. However, despite that distinction, as a practical matter this case is identical to *Monat*. In *Monat*, the plaintiff sought a more favorable outcome in a second trial, and in this case, plaintiff is also seeking a more favorable outcome in a second trial. It is of no consequence that the *Monat* plaintiff sought to relitigate negligence whereas plaintiff is likely only seeking to relitigate the amount of compensatory damages that it is legally entitled to recover from Sandy. In both instances, the purpose of the second action is to allow relitigation of an issue essential to the determination of the first action so as to permit the plaintiff an opportunity to obtain a more favorable outcome. As a result, we discern no rational basis to decline to apply *Monat* to the facts of this case. Mutuality of estoppel is not required in this case because Pioneer is asserting it defensively against plaintiff, who had a full and fair opportunity to litigate the issue of the amount of compensatory damages that it was legally entitled to recover from Sandy in the first trial.

In sum, collateral estoppel bars plaintiff from relitigating the amount of compensatory damages it is entitled to recover from Sandy. Because the amount of damages plaintiff is entitled to recover from Sandy is not in excess of the amount of damages plaintiff did, in fact, recover from Sandy as a result of the first action, no UIM benefits remain available to plaintiff under the terms of Parks's insurance policy. It is irrelevant that, under different circumstances, Pioneer might have opted to use the policy language to avoid being bound by the judgment in the first action. Under the facts and circumstances actually present in this case, Pioneer consented to be bound by the judgment and the judgment resulted in plaintiff receiving all damages that it was legally entitled to recover from Sandy.

Notwithstanding the applicability of the doctrine of collateral estoppel, plaintiff suggests that it is entitled to litigate its UIM claim against Pioneer because of "public policy." However, in its opinion on reconsideration, the trial court clarified that it was not relying on public-policy considerations as a basis for reinstating plaintiff's UIM claim against Pioneer. Therefore, we decline to address this issue further.

Reversed and remanded for further proceedings consistent with this opinion. Pioneer may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ James Robert Redford