*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IBO WARE,

        Plaintiff-Appellee,

v

MEEMIC INSURANCE COMPANY,

        Defendant-Appellant,

and

DUSTIN SCHILLING and KRYSTAL
SCHILLING,

        Defendants.

FOR PUBLICATION
March 05, 2025
9:16 AM

No. 366878; 367257
Wayne Circuit Court
LC No. 21-016631-NI

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

YOUNG, P.J.

Plaintiff Ibo Ware was injured when his car was struck by another vehicle. The vehicle that hit Ware was operated by defendant Dustin Schilling, owned by defendant Krystal Schilling, and insured by State Farm Insurance. Ware insured his vehicle through defendant Meemic Insurance Company, through which he paid an additional premium so that Meemic would "pay damages for bodily injury which is . . . sustained by an insured person . . . is caused by accident; and . . . arises out of the ownership, operation, maintenance or use of an uninsured motor vehicle[.]" (Emphases omitted.) After State Farm denied coverage for Dustin and Krystal, Ware sought to recover the uninsured motorist damages from Meemic. The trial court denied summary disposition for Meemic, finding that a genuine issue of material fact existed as to whether Meemic should pay Ware the uninsured motorist damages and also ordered the remainder of the case move

-1-

to arbitration.  Meemic appeals both decisions in these consolidated appeals.[1]  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL HISTORY

Ware was covered under an insurance policy issued by Meemic at all times relevant to this case.  The policy included uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident.  While driving a vehicle covered by that policy, Ware was in a collision with another vehicle driven by Dustin Schilling and owned by Krystal Schilling.  As relevant to the present appeal, because Ware believed the vehicle driven by Dustin was uninsured, he sued Meemic for uninsured motorist benefits.

Eventually, Meemic discovered the vehicle driven by Dustin had been covered by a policy issued by State Farm.  The State Farm policy provided bodily injury liability coverage in the amount of $250,000 per person and $500,000 per accident.  Upon learning of this policy, Meemic moved for summary disposition of plaintiff's uninsured motorist claim because the vehicle driven by Dustin was insured.  Ware countered by informing the trial court that State Farm had denied coverage for any liability arising out of the accident because Dustin and Krystal violated the policy's terms requiring notice of the accident and litigation.  In violation of the notice provision, State Farm was not notified until more than two years after the accident, one year after Ware filed suit, and six months after default was entered against Dustin and Krystal in the present case for failure to respond to the complaint.  Ware alleged this denial of coverage resulted in Dustin driving an uninsured vehicle under the terms of Ware's policy with Meemic.  Meemic disagreed, arguing the policy was clear that an uninsured motor vehicle could not have bodily injury liability coverage at the time of the accident.  In the present case, at the time of the accident, Dustin's vehicle *did* have such insurance and only lost coverage after the accident for failing to adhere to the necessary notice requirements.

After hearing oral arguments, the trial court determined Ware was correct and denied defendant's motion for summary disposition.  The trial court relied heavily on an unpublished opinion of this Court with nearly identical facts: *Integon Nat'l Ins Co v Berry*, unpublished per curiam opinion of the Court of Appeals, issued March 25, 2010 (Docket Nos. 289320, 289366, and 291175).  Shortly afterward, Ware orally moved the trial court to refer the remainder of the case to arbitration.  Meemic objected, but the trial court granted the motion.  These two appeals followed.

## II.  SUMMARY DISPOSITION

Meemic contends the trial court erred when it denied Meemic's motion for summary disposition.  We disagree with Meemic and instead affirm.  The trial court was correct when it

---

[1] *Ware v Meemic Ins Co*, unpublished order of the Court of Appeals, entered January 10, 2024 (Docket No. 366878); *Ware v Meemic Ins Co*, unpublished order of the Court of Appeals, entered January 10, 2024 (Docket No. 367257).

found that the Schillings' vehicle was "in essence . . . uninsured" and that Ware was entitled to uninsured motorist coverage under the automobile insurance policy through Meemic.

## A. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id.* "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "Resolution of this issue also requires this Court to interpret contract provisions, which presents a question of law reviewed de novo." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271; 1 NW3d 308 (2022).

## B. LAW AND ANALYSIS

The trial court was correct when it denied Meemic's motion for summary disposition because, under the terms of the policy, Ware was entitled to uninsured motorist coverage.

"Neither uninsured motorist [] coverage nor [underinsured motorist] coverage is required by Michigan law, and therefore the terms of coverage are controlled by the language of the contract itself, not by statute." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 84; 910 NW2d 691 (2017) (quotation marks and citation omitted). Recall that, "[a]n insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties." *Hunt v Drielick*, 496 Mich 366, 372-373; 852 NW2d 562 (2014) (quotation marks and citation omitted). "First, it must be determined whether the policy provides coverage to the insured, and, second, the court must ascertain whether that coverage is negated by an exclusion." *Hunt*, 496 Mich at 373 (quotation marks and citation omitted).

Any interpretation of a contract must begin with the language used in the contract itself. *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). The parties do not dispute that Ware was generally covered under the policy with Meemic, the premiums were properly paid, and the insurance policy contained uninsured motorist benefits. The parties only dispute whether the uninsured motorist coverage extends to the injuries Ware suffered in the subject accident. The policy states that Meemic "will pay damages for bodily injury which is . . . sustained by an insured person . . . is caused by accident; and . . . arises out of the ownership, operation, maintenance or use of an uninsured motor vehicle[.]" (Emphases omitted.) The only disagreement pertains to whether the accident arose out of the operation of an uninsured motor vehicle. The policy defines the term as follows:

Uninsured Motor Vehicle means a motor vehicle which is:

> A. not insured by a bodily injury liability policy or bond that is applicable at the time of the accident;
>
> B. a hit-and-run motor vehicle of which the operator and owner are unknown and which negligently makes physical contact with
>
> > (1.) you or a resident relative, or
> >
> > (2.) a motor vehicle which an insured person is occupying; and which the accident has been reported within 24 hours to the police.
>
> C. insured by a bodily injury liability policy or bond at the time of the accident issued by a company that is or becomes insolvent. [Emphases omitted.]

The dispute in the present case focuses on subsection A of the definition of an uninsured motor vehicle. To fall under that definition, the vehicle driven by Dustin on the day of the accident must have been "not insured by a bodily injury liability policy or bond that is applicable at the time of the accident[.]" (Emphasis omitted.) It is undisputed that at the time of the accident, the vehicle driven by Dustin was covered by an insurance policy with State Farm. However, when State Farm eventually was informed about Dustin and Krystal's potential liability, it denied coverage because of contractual obligations Dustin and Krystal did not meet related to notice. For this issue, the sole question to consider is whether the vehicle driven by Dustin was "not insured by a bodily injury liability policy or bond that is applicable at the time of the accident[.]" (Emphasis omitted.) More specifically, the parties disagree about what the word "applicable" means in this context. As the trial court observed, this Court has already answered this question, albeit in an unpublished decision.[2]

In *Integon*, unpub op at 12, Bristol West insured Coze Elissa Long, whose policy contained uninsured motorist coverage. That coverage applied if Long was injured in an automobile accident caused by someone driving an uninsured motor vehicle. *Id*. According to the relevant provision in Bristol West's policy, an uninsured motor vehicle included one "[n]ot insured by a bodily injury liability bond or policy that is applicable at the time of the accident[.]" *Id*. (quotation marks omitted). Long was injured in an automobile accident she alleged was caused by Vincent Berry, who was driving a vehicle owned by Patricia Berry. *Id*. at 13. The vehicle owned by Patricia was covered by the liability policy. *Id*. However, the insurance company that contracted with Patricia to establish the liability policy denied coverage because Patricia "failed to provide the notice required under her agreement." *Id*. at 13-14. Bristol West argued Vincent was not driving an uninsured motor vehicle, as that term was defined in Bristol West's policy, because, at the time of the accident, the vehicle was covered by the liability policy. *Id*. at 12-13. "Bristol West argues

---

[2] We recognize *Integon* is not binding on us. MCR 7.215(C)(1); *Black v Cook*, 346 Mich App 121, 138 n 4; 11 NW3d 563 (2023). It can, however, be considered persuasive. *Id*.

that, by referring to an insurance policy that 'is applicable at the time of the accident,' this definition excludes those situations where the motor vehicle was insured at the time of the accident, even if the insurer under that policy later denies coverage." *Id*. at 13.

This Court ultimately disagreed with Bristol West. *Id*. Relevantly, the *Integon* Court reasoned that there was a difference between the *existence* of a liability policy and whether the liability policy *applied*. *Id*. This Court explained something "is applicable" when it is "capable of being applied in the appropriate context." *Id*. With respect to motor vehicle accidents, a liability policy "is applicable" when "the insured is entitled to the protection afforded under the policy." *Id*.

According to this Court's reasoning, protection under a liability policy is afforded depending "on the terms of the policy at issue and whether the insured complied with those terms." *Id*. Thus, while Patricia maintained a liability policy at the time of the accident, "that fact did not mean that the policy necessarily 'applied' at the time of the accident." *Id*. Instead, the liability policy only became applicable when Patricia "perform[ed] all of her obligations under the agreement." *Id*. Because she failed to do so, this Court concluded, the liability policy was not applicable at the time of the accident. *Id*. at 13-14. "Because the motor vehicle driven by Vincent [] was not insured by a bodily liability policy that was 'applicable at the time of the accident,' it was an uninsured motor vehicle within the meaning of the policy issued by Bristol West." *Id*. at 14.

Neither party claims that *Integon* is factually distinguishable from this case and that is for good reason—it is not. We also find the legal reasoning of *Integon* sound and in keeping with the plain language of the insurance policy and our rules of interpretation for the same.

And while it is not binding on this Court, we also take the opportunity to respond to the critique of *Integon* in *Collins v Nat'l Gen Ins Co*, 834 F Supp 2d 632, 633-634 (ED Mich, 2011). In *Collins*, the federal district court was presented with a similar situation as encountered in this case and *Integon*. When considering the issue of uninsured motorist coverage under the circumstances, the district court declined to follow *Integon* and instead relied on the language of the contract. *Collins*, 834 F Supp 2d at 636-637. The federal district court provided the following reasoning:

> Plaintiff argues that the later recision [sic] and reformation of the Citizens Policy renders it inapplicable at the time of the accident, relying upon *Integon* [unpub op at 12-14], an unpublished opinion of the Michigan Court of Appeals interpreting similar contractual language. Although the *Integon* court found a policy must be enforceable to be applicable, it appears to have completely read the crucial phrase "at the time of the accident" out of the contract. *Id*. [] Such an interpretation directly violates the well-established rule in Michigan and elsewhere that courts must give meaning to all terms in a contract to the extent possible. In *Integon*, the court found that the failure of the insured to provide notice of the accident and lawsuit to the insurer absolved the insurer of all liability under [MCL] 257.520(f)(6) and rendered the policy inapplicable. *Integon*, [unpub op at 12-14]. The court went further, however, and decided that the failure to notify the insurer after the accident rendered the policy inapplicable at the time of the accident. *Id*. [] This court

declines to follow that ruling, finding that binding precedent of the Michigan Supreme Court precludes the holding in *Integon*. [*Collins*, 834 F Supp 2d at 636-637 (citations omitted).]

In other words, the federal district court concluded that the *Integon* panel failed to properly account for the phrase "at the time of the accident." We disagree.

The plain language of the policy provision in question is, in relevant part, that "an uninsured motor vehicle is a motor vehicle that is not insured by a bodily injury liability policy or bond that is applicable at the time of the accident." The federal court reads "at the time of the accident" to modify "applicable," but doing so fails to adhere to rules of statutory construction. "It is a general rule of grammar and of statutory construction that a modifying word or clause is confined solely to the last antecedent, unless a contrary intention appears." *Sun Valley Foods Co. v Ward*, 460 Mich 230, 237; 596 NW2d 119, 123 (1999). It is clear from the policy, taken as a whole, that "at the time of the accident" was not meant to modify applicable, because "applicable" is not the last antecedent but is *itself* a modifying word. *Sun Valley*, 460 Mich at 237. It is clear from the plain language that "applicable" modifies "bodily injury liability policy or bond." And that modification makes sense. When we read Meemic's policy in full, we see that it dedicates pages to explain to the policyholder what to do if there are multiple applicable bodily injury liability policies or bonds at issue and how to determine priority. As a result, the only antecedent that "at the time of accident" could be read to modify is "insured."

We note, too, that this is the only interpretation that can avoid absurd outcomes. If we were to read "at the time of the accident" to modify "applicable" then there would *never* be a situation wherein uninsured motorist coverage was applicable. Here, State Farm required a notice process before coverage was actually applicable to the Schillings. The Schillings failed to complete that timely and so they did not have coverage from State Farm. It follows that the same coverage was likewise unavailable at the time of the accident, as the Schillings had not completed the notice steps then either. The only question one can answer at the time of the accident is whether someone is insured. A policy's applicability will only become known at some point after the accident in every case, given the requirements set by insurers themselves. Our analysis of this matter properly considers the entire sentence as a whole, giving meaning to every word.

In essence, this provision asks one simple question before supplying coverage: is the motor vehicle insured by a bodily injury liability policy or bond that was applicable at the time of the accident? If the answer is yes, then there is no coverage for uninsured motorist benefits. If the answer is no, then there is coverage for uninsured motorist benefits. The reason behind the yes or no answer is irrelevant to the question. In the present case, it does not matter that the answer is no because the liability coverage was denied. What matters is simply that the answer is no, there is no coverage for bodily injury liability, meaning there is coverage for uninsured motorist benefits. In the hypothetical case where the answer is yes, it likewise does not matter why the vehicle is insured by a liability policy, the fact that the vehicle is insured means that it is not an uninsured motor vehicle as defined by the policy in this case.

# III. ARBITRATION

This Court recently summarized the relevant caselaw related to whether an issue or case was subject to arbitration:

> "Arbitration is a matter of contract." *Altobelli* [*v Hartmann*], 499 Mich [284,] 295[; 884 NW2d 537 (2016)] (quotation marks and citation omitted). "[A] valid agreement must exist for arbitration to be binding." *Ferndale v Florence Cement Co*, 269 Mich App 452, 460; 712 NW2d 522 (2006). In *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021), our Supreme Court recognized that "[a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." (Quotation marks and citation omitted; alterations in original.) "The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *Fromm v Meemic Ins Co*, 264 Mich App 302, 305; 690 NW2d 528 (2004).
>
> "[W]hen interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Altobelli*, 499 Mich at 295. "Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning." *Id*.
>
> > The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. If the dispute is arbitrable, the merits of the dispute are for the arbitrator. [*Id*. at 295-296 (quotation marks and citations omitted).]
>
> Ascertaining the arbitrability of an issue requires a court to consider whether the parties' contract contains an arbitration provision, whether the disputed issue arguably comes within the arbitration clause, and whether the dispute is expressly exempted from arbitration by the contract. *Fromm*, 264 Mich App at 305-306. [*Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 523-524; 8 NW3d 207 (2023) (first, second, third, and seventh alterations added).]

According to the caselaw, then, this analysis must begin with the language of the contract, which states the following as related to arbitration regarding uninsured motorist coverage:

If we do not agree with the insured person(s):

> A. that they are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; or
>
> B. as to the amount of payment;

either they or we must demand, in writing, that the issues, excluding matters of coverage, be determined by arbitration. A Demand for Arbitration must be filed within three years from the date of the accident or we will not pay damages under this Part. Unless otherwise agreed by express written consent of both parties, disagreements concerning insurance coverage, insurance afforded by the coverage, whether or not a motor vehicle is an uninsured motor vehicle or the timeliness of a Demand for Arbitration, are not subject to arbitration and suit must be filed within three years from the date of the accident.

The most relevant portion of the language is the last sentence, which removes from arbitrability issues involving "insurance coverage, insurance afforded by the coverage, whether or not a motor vehicle is an uninsured motor vehicle or the timeliness of a Demand for Arbitration." The parties agreed that the issue of whether Ware was entitled to coverage for uninsured motorist benefits was not arbitrable under the clause just quoted. Indeed, the trial court impliedly agreed in light of it deciding the issue.

The real dispute relates to what should occur *after* the nonarbitrable issues have been handled by the trial court. Ware and the trial court agreed the remainder of the case should be submitted to arbitration. Meemic contends the case should not be bifurcated in such a manner. We agree with Meemic.

As an initial observation despite dedicating a section to it in his brief, plaintiff has effectively agreed not to arbitrate the remaining issues in the case. Pertinently, he wrote: "Plaintiff-Appellee would have no issue with this Court holding that he gets to try this case instead of taking it to binding arbitration on remand." This is particularly important because, under the policy, arbitration can only occur when one party demands it. Moreover, according to the express terms of the policy, the demand has to be in writing. The parties impliedly agree no such writing has ever been issued. Instead, plaintiff orally moved for arbitration, but now has appeared to backtrack on that desire. If the parties expressly agree they do not want to arbitrate and neither party has submitted a written demand for such, then there is no dispute. Such renders this issue moot. *TM*, 501 Mich at 317.

If we overlook the potential mootness here, a reversal is still warranted as we are bound by the decision in *Fromm*, 264 Mich App at 305-306. There, this Court recognized that "a court should not interpret a contract's language beyond determining whether arbitration applies and should not allow the parties to divide their disputes between the court and an arbitrator." *Id*. at 306. The reason for the rule is "[d]ispute bifurcation defeats the efficiency of arbitration and considerably undermines its value as an acceptable alternative to litigation," and "contract provisions that assign new roles to courts and arbitrators impermissibly usurp the authority of the court rules and the arbitration statutes." As a result, this Court declined to "enforce a provision that gives courts the authority to determine the legal effect of a contract but requires the arbitration of damages and other factual issues." *Id*.

If we read the arbitration provision in this case in the manner suggested by plaintiff, it would be running afoul of the binding caselaw provided in *Fromm*. Specifically, the ruling would allow the parties to litigate coverage under the contract, including the very specific determination of whether Dustin was an uninsured motorist, and then refer the remaining questions to the

arbitrator. *Id*. Because *Fromm* states such a division of the case is impermissible, the trial court erred when it granted plaintiff's oral request to submit the case to arbitration. *Id*. Ware claims this is the wrong result because a trial court is required to act as a gatekeeper before claims are automatically submitted to arbitration. While he is correct such law exists, the gatekeeper role of the trial court relates to issues regarding arbitrability. *Legacy Custom Builders*, 345 Mich App at 523-524. Thus, if a referral to arbitration was the trial court's first and only decision, such would not run afoul of the rule discussed. But, because the trial court decided the issue of coverage and then referred the case to arbitration, the case was effectively being bifurcated, which was improper. *Id*. Because Ware has now seemingly backtracked on his request for arbitration or because arbitration would unlawfully bifurcate these proceedings, we vacate the court's order to send the remaining issues to arbitration and remand for further proceedings in the trial court.

## IV. CONCLUSION

For the reasons explained above, we affirm the trial court's order denying defendant's motion for summary disposition, reverse the order referring the case to arbitration, and remand for further proceedings. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace